# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6588 | **DATE** | 9/16/2003 |
| **CASE TITLE** | Janice Young vs. Jo Anne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. For the reasons stated in this memorandum opinion and order, both parties' Rule 56 motions are denied (18-1), but Young's alternative motion to remand is granted. (18-2)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | |
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | | SEP 17 2003 date docketed | 27 |
| | Notified counsel by telephone. | | | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | 9/16/2003 date mailed notice | |
| SN | courtroom deputy's initials | | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 1 7 2003

JANICE YOUNG, )
)
       Plaintiff, )
)
v. ) No. 02 C 6588
)
JO ANNE B. BARNHART, Commissioner, )
Social Security Administration, )
)
       Defendant. )

MEMORANDUM OPINION AND ORDER

Janice Young ("Young") seeks judicial review pursuant to the Social Security Act ("Act"),[1] more specifically Sections 405(g) and 1383(c)(3), of the final decision of Commissioner of Social Security Jo Anne Barnhart ("Commissioner") denying Young's claim for supplemental security income ("SSI") disability benefits. Both sides have moved for summary judgment under Fed. R. Civ. P. ("Rule") 56, and Young has alternatively moved to remand for further proceedings. For the reasons stated in this memorandum opinion and order, both parties' Rule 56 motions are denied, but Young's alternative motion to remand is granted.

Procedural Background[2]

Young filed an application for disability insurance benefits

---

[1] All references to the Act will take the form "Section--," using the Title 42 numbering rather than the Act's internal numbering. All portions of 20 C.F.R. will be cited "Reg. § --." Finally, citations to Young's and Commissioner's memoranda take the form "Y. Mem.--" and "C. Mem.--," respectively.

[2] What follows in the next sections of the text is drawn from the administrative record (cited "R.--").



and SSI benefits on October 26, 1999, asserting an onset date of October 1, 1994 (R. 31, 32). On February 7, 2000 her application was initially denied, and it was again denied upon reconsideration on May 15, 2000 (id. 33-36, 39-41). After filing a timely request for hearing, on June 2, 2000 Young--represented by attorney Roger S. Hutchinson (id. 197)--appeared before Administrative Law Judge ("ALJ") John Kraybill (id. 42, 197). Testifying at the June 2 hearing ("Hearing") were Young, her daughter Christine Young, medical expert Dr. Hilton Gordon and vocational expert Cheryl Hoiseth ("Hoiseth")(id. 198). ALJ Kraybill's January 18, 2001 decision concluded that Young was not disabled and that her medically determinable impairments did not prevent her from performing her past work (id. 14-20)

Young filed a request for review with the Appeals Council on January 22, 2001 (R. 10). After reviewing the ALJ's decision, the Appeals Council denied reversal or remand on July 17, 2002 (id. 5-6). On September 16, 2002 Young filed a timely complaint for judicial review.

## Background

Young was born on May 8, 1943 (and was thus 57 years old at the time of the ALJ's decision), is 5 feet 9-1/2 inches tall and weighs 264 pounds (R. 52, 125). She has completed 12 years of education and one year of college at Bryant Station Bus school (id. 73). Her previous work experience has included that of data

entrant, receptionist and general office worker at a number of places (id. 68, 76-79). Young's complaints of numerous ailments have included chronic obstructive pulmonary disorder ("COPD"), knee strain, chronic edema, obesity, diabetes mellitus, hypertension and recurrent chest pain (Y. Mem. 2).

On April 29, 1995 Young was seen in the emergency room for complaints of left knee pain that had lasted approximately one month (R. 103-107). She was treated with one dose of Toradol, was also prescribed Advil or Motrin and was discharged (id.).

On January 19, 1999 Young was seen at Cook County Hospital for sharp central chest and back pain, chronic pedal edema, obesity, urinary tract infection and hypertension (R. 111-12). Her chest x-ray showed mild cardiomegaly without congestive heart failure and no pneumonia or chronic pulmonary disease (id. 113). On December 2, 1999 Young's treating physician, Dr. Enrique Martinez, completed a report stating that Young had asthma attacks every two months and that her breath exhibited expiratory wheezes and mild prolonged expiration (id. 117). Dr. Martinez opined that Young could not do physically active work but that she could stand, hear and speak well (id. 118).

Dr. Bhupendra Patel conducted a 40-minute internal medicine consultative examination on January 6, 2000 (R. 124-28). Young complained then that she had suffered for about a year from shortness of breath that worsened with activity (id. 124). Dr.

Patel also found her unable to walk on heels and toes and unable to squat, and also that she had ronchi upon lung examination, moderately elevated high blood pressure despite medications, obesity and a chronic cough (id. 125-28). Dr. Patel further found that Young could walk 50 feet without support and had no difficulty getting on and off the examination table (id. 126). Dr. Patel listed three impressions: COPD, high blood pressure and obesity (id. 128).

Young also underwent two pulmonary tests that indicated an FEV1 level of 1.49 on December 27, 1999 (R. 121) and 1.89 to 3.05 on January 13, 2000 (id. 131-34). Listing 3.02(a) in Reg. §404 Subpt. P, App. 1 charts an FEV1 level of 1.45 to 1.55 or less to indicate substantial and disabling chronic pulmonary obstruction for someone of Young's height.

On January 21, 2000 Dr. Harry Bergmann, a non-treating non-examining state agency physician, reviewed the medical evidence of record and opined that Young had no exertional limitations but needed to avoid concentrated dust and fumes (R. 135-42). Next, on February 25, 2000 Dr. Martinez completed a pulmonary RFC that reported that Young's symptoms were severe enough to interfere often with concentration and attention and that she was incapable of even low stress jobs (id. 164). Additionally, Dr. Martinez found that Young could walk less than one block, sit for only one hour at a time, stand for 15 minutes at a time and sit, stand and

4

walk for less than two hours in an eight-hour workday (id. 165). Dr. Martinez also opined that Young could never lift anything (id. 166-67).

On March 9, 2000 Dr. Martinez examined Young again and opined that she was doing well with a mild cough with sputum, but that her lungs were clear (R. 175). Then on April 20 Dr. Martinez found that Young had bronchitis/emphysema, hypertension, shortness of breath upon exertion and sharp substernal pain at rest that occurs spontaneously one to two times a week (id. 143-46). Dr. Martinez also opined that Plaintiff could not do much lifting (id. 148), that half of the days in a month are bad for Young and that she could not sustain a normal workday (id. 167). Finally before the Hearing, on May 6, 2000 Dr. Virgil Pilapil, a non-treating non-examining state agency physician, reviewed the medical evidence of record and opined that Young could perform work despite her impairments (R. 153-61).

As stated earlier, ALJ Kraybill conducted the Hearing on June 2, 2000. Dr. Hilton Gordon testified as an impartial medical expert. Dr. Gordon opined (1) that although Young had "significant shortness of breath," her pulmonary impairment did not meet or equal a listing (R. 213) and (2) that she has a functional capacity for sedentary work with restriction on environmental exposure (id.). ALJ Kraybill did not ask any questions of Dr. Gordon as to the impact of Young's obesity.

5

Hoiseth testified as a vocational expert that based on just the physical limitations detailed in Dr. Martinez's report, Young would not be able to perform any work (id. 220). Hoiseth identified Young's past work as a general office clerk as sedentary semi-skilled work (id. 217). ALJ Kraybill did not propound any hypotheticals, but Young's attorney asked Hoiseth a few questions, including whether or not an individual who would need to miss work once a week could perform any jobs--and Hoiseth answered "no" (id. 220).

ALJ Kraybill reviewed the submitted evidence and made a series of findings adverse to Young's claim:

1. While Young had multiple impairments that were severe, she was not under a disability because "the condition failed to meet or equal any section of the Listing of Impairments" (R. 19).

2. Dr. Bergmann's assessment of the combination of impairments was correct, for "[t]here were no exertional limitations; notwithstanding claimant's complaints of shortness of breath and high blood pressure" (id. 16).

3. Dr. Martinez's opinion "on the issue of the nature and severity of the claimant's impairments was not well-supported by medically acceptable clinical and laboratory diagnostic techniques and was inconsistent with the other substantial evidence in the case record" (R. 18).

4. Young was not credible because "[h]er complaints
    were overstated and not corroborated by objective medical
    evidence" (id. 18).
ALJ Kraybill mentioned Young's obesity only once and just as an
impression of Dr. Patel (id. 16). In sum, the ALJ held that
Young's RFC allowed her to perform sedentary work, so that Young
was "not entitled to a period of disability...and to disability
insurance benefits...of the Social Security Act." (id. 20).

                Standard of Review and Applicable Law

    Judicial review of any decision by Commissioner, as
authorized by Section 405(g), requires that findings of fact must
be upheld if they are supported by substantial evidence. Such
review is therefore limited to determining (1) whether
Commissioner applied the correct legal standards in reaching the
decision and (2) whether there is substantial evidence in the
record to support the findings (Clifford v. Apfel, 227 F.3d 863,
869 (7th Cir.2000)).

    Substantial evidence means "such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion"
(Kepple v. Massanari, 268 F.3d 513, 516 (7th Cir. 2001), quoting
(as always) Richardson v. Perales, 402 U.S. 389, 401 (1971)). In
reviewing Commissioner's determination this Court must look at
the entire administrative record, but it may not reweigh the
evidence, resolve conflicts, decide credibility questions or

                                7

substitute its own judgment for Commissioner's (Clifford, 227 F.3d at 869). That does not however call for an uncritical rubber-stamping of Commissioner's decision (id.).

To be eligible for benefits, Young must suffer from a "disability," defined in pertinent part as (Section 423(d)(1)(A)):

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995)(citations omitted) sets out the familiar five-step inquiry prescribed by Reg. §416.920 to determine whether a claimant is disabled:

> (1) whether the claimant is currently employed;
> (2) whether the claimant has a severe impairment;
> (3) whether the claimant's impairment meets or equals one of the impairments listed by the SSA, see 20 C.F.R. § 404, Subpt. P, App. 1;
> (4) whether the claimant can perform her past work; and
> (5) whether the claimant is capable of performing work in the national economy.
>
> If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy.

And if a disability determination reaches step five, the ALJ must discharge Commissioner's burden of proof either by applying the Medical Vocational Guidelines or through the use of a vocational expert (Herron v. Shalala, 19 F.3d 329, 336-37 (7th Cir.1994)).

Reg. §416.927(e)(2) charges an ALJ with making the ultimate determination of disability. But in making that determination, an ALJ (whose decision typically becomes that of Commissioner herself) "must minimally articulate his reasons for crediting or rejecting evidence of disability" (Scivally v. Sullivan, 966 F.2d 1070, 1076 (7th Cir. 1992)) and "build an accurate and logical bridge between the evidence and the result" (Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996)). As Herron, 19 F.3d at 333 (internal citation omitted) teaches:

> Although a written evaluation of each piece of evidence or testimony is not required, neither may the ALJ select and discuss only that evidence that favors his ultimate conclusion.

Finally, "as this Court [our Court of Appeals] has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings" (Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)). In assessing a claimant's RFC an ALJ must consider all of the claimant's symptoms, including pain, that can reasonably be found to be consistent with the available evidence (Reg. §416.929).

### Impact of Young's Obesity

Neither side disputes the first two steps in the inquiry, but their conflicts arise in advancing to the third step and beyond. At the third step, it is Young's burden to show that she satisfied all of the criteria of the listing (Pope v. Shalala, 998 F.2d 473, 480 (7th Cir. 1993)). On that score, after Young's

9

initial pulmonary function test, a second pulmonary test showed that her condition was not severe (R. 131-34), and two testifying medical experts opined that Young's impairment was not of listing-level severity (id. 31, 32, 213)

But Young argues correctly that her obesity should be considered when evaluating the extent of her functional loss due to her other documented illnesses. According to SSR 02-1p (67 FR 57859, 57862 (footnote omitted))[3]:

> Thus, we [the Social Security Administration] may find that the combination of a pulmonary or cardiovascular impairment and obesity has signs, symptoms and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings. However, we will not make assumptions about the severity of functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

ALJ Kraybill failed entirely to consider the impact of Young's extreme obesity[4] on her impairments. Instead the ALJ

---

[3] Commissioner argues that "SSR 02-1p requires a claimant to have another impairment of Listing-level severity in order for the claimant's obesity to be considered Listing-level. Plaintiff clearly does not have nor does she suggest if and how any of her impairments meet a listing, and thus SSR 01-1p is inapplicable" (C. Mem. 9). But SSR 02-1p's provisions (67 FR at 57860) "remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity."

[4] This is a lay characterization by this Court--under the National Institutes of Health medical criteria the adjective

10

simply relied on Dr. Bergmann's opinion, which in turn relied on the brief consultative examination of Dr. Patel (in spending a total of 40 minutes on Young's case, including the review of the prior paper record, Dr. Patel would appear to have devoted only a short time to his actual examination of Young)(R. 16). ALJ Kraybill merely agreed "in Dr. Bergmann's assessment that there were no exertional limitations; notwithstanding the claimant's complaints of shortness or [sic] breath and high blood pressure" (id. 16). But on his part, Dr. Bergmann failed to provide any documentation that he considered Young's obesity in his analysis. And though Dr. Patel's identification of obesity as Problem #3 (id. 128) lists obesity as a relevant factor, ALJ Kraybill mentioned that just once in passing and only as one of Dr. Patel's findings. Finally, the ALJ failed to discuss obesity as a factor in determining whether or not the combinations of impairments is equal to a listed impairment as required by Reg. §§404.1526(a) and 416.926(a). That overall delinquency must be corrected and is a sufficient reason to remand the case.

Other evidence at the hearing further supports the notion that ALJ Kraybill failed to consider Young's obesity. In response to questioning by ALJ Kraybill, Dr. Gordon addressed only whether or not Young met the listing of shortness of breath and did not consider whether other impairments met the listing or

---

"extreme" is a term of art that applies to a Body Mass Index that Young is a hairsbreadth short of reaching (see SSR 02-1p).

11

if obesity factored into the analysis (R. 213). Even though Young was represented by counsel at the hearing, an ALJ is required to develop the record and the arguments both for and against granting benefits (see, e.g., Sims v. Apfel, 530 U.S. 103, 110-11 (2000)). Thus ALJ Kraybill failed to address how Young's obesity impacted her other impairments, and such incompleteness must also be cured upon remand.

In addition, the ALJ failed to discuss completely why the detailed findings of Dr. Martinez, Young's treating doctor, were not given weight, while substantial weight was given to Dr. Bergmann's incomplete RFC.[5] Every ALJ is required to give "good reasons" as to the weight (whether greater or lesser, though the general rule is to ascribe greater weight) that is given to the treating source's opinion (Reg. §404.1527(d)(2)). But here the ALJ merely stated that Dr. Martinez' opinion was inconsistent with the rest of the evidence in the record (R. 18) and focused upon Dr. Martinez' description of Young's "stable" COPD as inconsistent with Young's inability to walk a block (id. 16). ALJ Kraybill's use of such a phrase as "inexplicably" (id. 16) comes very close to "playing doctor." Upon remand the ALJ should consider whether and how Dr. Martinez' findings contradict other evidence in the record in the course of reaching a conclusion as

---

[5] Dr. Bergmann failed to complete the exertional limitations portion, implying that Young can perform all work, and he specifically marked that he had not been able to review the treating source's statement (R. 16).

12

to which findings carry greater force and hence as to who should prevail.[6]

## ALJ Kraybill's Credibility Determination

Additionally, Young correctly notes the incompleteness of the ALJ's determination as to Young's credibility. ALJ Kraybill's credibility determination consisted entirely of his conclusory statement that he "did not find the claimant credible. Her complaints were overstated and not corroborated by objective medical evidence" (R. 18 (citations omitted)). That statement directly flouts the mandate of SSR 96-7p (61 FR 34483, 34484):

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Here ALJ Kraybill provided no explanation nor any reference to evidence in the case record, as mandated by SSR 96-7p. Moreover, ALJ Kraybill failed to refer in his credibility determination to any of Young's complaints regarding her symptoms. Consequently "the ALJ must conduct a reevaluation of [Young's] complaints of pain with due regard for the full range

---

[6] Although C. Mem. 13-15 advances a number of suggested explanations, such argument smacks of post-hoc rationalizations, rather than reflecting anything that the ALJ actually said and did.

13

of medical evidence" (Zurawski v. Halter, 245 F.3d 881, 888 (7th Cir. 2001)), including the impact of Young's obesity. Those errors too must not be repeated on remand.

### Impact of Young's Other Complaints

Just as discussed here with regard to obesity, the ALJ on remand must reconsider the impact of Young's knee strain, chest pain and edema on her condition. As Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985)(among other cases) has taught:

> This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

Although Commissioner does provide possible explanations for rejecting Young's additional complaints (C. Mem. 16-19), ALJ Kraybill neither mentioned nor rejected them in his opinion. Upon remand, the ALJ assigned to the case must specifically address those complaints as well as any impact they may have upon Young's credibility.

### Failure To Consider Obesity in the RFC

Because of ALJ Kraybill's failure to take into account Young's obesity, his analysis of Young's RFC also is flawed. No RFC can be valid without taking into account all medical impairments and their impact upon the type of work that a petitioner can perform, for SSR 96-8p (61 FR 34474, 34477)

14

requires that the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" In this instance the failure to consider Young's obesity was harmful error in the ALJ's RFC determination, because one of the main characteristics of that impairment is an increase in fatigue and pain and decrease in activity as discussed in SSR 02-1p. Moreover, the ALJ's consideration of Young's other complaints may impact the final RFC.

## Conclusion

What has been said here bars judgment as a matter of law in favor of Commissioner. Instead a remand is necessary to see whether or not a full analysis and articulation in the respect that this opinion has found wanting will produce the same conclusion that the ALJ reached.

But what of the other side of the coin--the possibility that Young can prevail at this stage of the dispute? On that score no protracted discussion is needed, for the already discussed uncertainty as to the effect of Young's obesity (as well as other complaints) bars Young from a current victory when reasonable inferences are drawn in Commissioner's favor, as they must be on Young's Rule 56 motion. Absent the factoring of Young's obesity into ALJ Kraybill's final assessment of Young's functioning, Young cannot gain judgment as a matter of law.

Consequently, both Young's and Commissioner's motions for

15

summary judgment are denied, while Young's motion to remand is granted (a "sentence four" remand under Section 405(g)). It seems a close call as to whether ALJ Kraybill can be certain to separate himself from his earlier omissions to start afresh and reach a wholly objective result on remand,[7] but this Court will leave to Commissioner the decision as to the assignment of an ALJ to handle the remand (see the discussion in such cases as Sarchet, 78 F.3d at 309).[8]

/s/ Milton I. Shadur
Milton I. Shadur
Senior United States District Judge

Date: September 16, 2003

---

[7] This is not of course to suggest that the ALJ would consciously adhere to his earlier conclusion even though a fresh pair of eyes might take a different view. It is rather that, just as a matter of human nature, the subliminal effect of an earlier decision may on occasion get in the way of the required total objectivity.

[8] This opinion in draft form was the final work product of this Court's fine (and just-departed) law clerk, Nathaniel Edmonds, Esq. Although the subject matter was less demanding than many of the difficult problems on which he worked during his clerkship, it exemplified the high quality that consistently marked his work. Having said that, this Court hastens to add (as it invariably does when it is appropriate to pay such a tribute to one of its always outstanding law clerks) that it has carefully reworked each sentence and read each case cited in this opinion (and, of course, some uncited cases as well), so that the end product is this Court's own. If then any errors have found their way into the final version of this opinion, the sole responsibility must be laid at this Court's doorstep and not that of its law clerk.

16